## COMPENSATION TO ATTORNEYS REPRESENTING A RELIGIOUS SOCIETY.

Common Pleas Court of Hamilton County.

### WM. W. PRATHER v. FIRST PRESBYTERIAN SOCIETY.

Decided, June 25, 1912.

*Excessive Verdict—Power of Trial Court With Respect to—Remittitur—Counsel Fees—Where an Unnecessary Amount of Labor Was Performed—Difficulty in Obtaining Testimony of Attorneys Against the Claim of an Attorney for Services—Legal Ethics.*

1. There resides in a trial court, in furtherance of justice and due administration of the law and regardless of the grounds for a new trial set out in the statute, plenary power to grant, in case of an excessive verdict, either a new trial or the option to the plaintiff of accepting a remittitur.

2. Where, in an action affecting the title to church property, the record discloses that the judgment as entered in favor of the church was based upon well settled law of this state, a court in a subsequent action to fix compensation to counsel for the church, will note the fact that said counsel brought into the case many features and performed a great amount of labor for which no occasion existed.

3. Furthermore, in view of the difficulty of obtaining testimony from attorneys calculated to reduce the amount claimed by a brother attorney for services rendered, a court will not be entirely governed, in an action to recover counsel fees, by the fact that certain attorneys testified that said services were worth a very large sum, and no testimony by attorneys was offered in opposition thereto.

4. Where the testimony goes to show that the time consumed by two attorneys in and about a case in which they were employed, although covering three and one-half years, did not amount to more than one hundred and fifty days, a verdict for $15,000 in their favor, which must be paid by a religious society, will be regarded as excessive, and a new trial will be granted in the event the plaintiffs refuse to accept a remittitur of $5,000.

*A. B. Benedict,* for Wm. W. Prather.

*Otis H. Fisk,* for Sanford Brown.

*Thornton M. Hinkle* and *C. D. Robertson,* for First Presbyterian Society.

GORMAN, J.

On motion for a new trial.

This is an action begun by the plaintiff, Wm. W. Prather, to recover $14,200 claimed to be due from the defendant, the First Presbyterian Society, for legal services rendered by plaintiff to the defendant between the dates of February 26, 1907, and January 17, 1911, in case No. 53105, in the Superior Court of Cincinnati, entitled "First Presbyterian Society of Cincinnati v. Geo. E. Markley et al," in and about the controversies, questions, issues, business and matters in said case concerning and relating thereto, and in and about perfecting and confirming and protecting and quieting the title of defendant to certain church property on East Fourth street in the city of Cincinnati.

The defendant, by its answer, admits that legal services in some of the matters referred to in the petition were rendered by the plaintiff, but avers that they were rendered jointly by plaintiff and one Sanford Brown, also an attorney, under a joint employment of the two for that purpose. It also avers, in its answer, that its title to said property is that of trustee only, for religious and charitable uses of an ecclesiastical body known as the First Presbyterian Church in Cincinnati. Defendant further avers that the plaintiff, though duly requested, has refused to render a bill or statement showing the particulars of the services he claims to have rendered and his charges therefor. The defendant further avers that Sanford Brown is a necessary party plaintiff to this cause in order that the defendant's liability, if any, and the amount, if any, due to said plaintiff and Brown under said joint employment may be settled in one suit, and avers that a complete determination of the matters and issues involved herein can not be had with justice to this defendant without the presence of said Sanford Brown. Defendant further avers that it is, and always has been ready and willing to pay the balance, if any, due of the reasonable value of said services when agreed upon with both said attorneys; and it avers that it has paid them $1,300 on account thereof, but they have refused to act together jointly in fixing the balance claimed to be due therefor.

Defendant asks that plaintiff be required to make the said Sanford Brown a party herein, and the amount, if any, in which it is indebted to said attorneys, or either of them, be ascertained, and that it be thereupon dismissed with its costs, and for such other relief as it may be entitled to.

Thereupon said Sanford Brown was made a party to this cause, and filed answer and cross-petition and an amended answer and cross-petition, setting up his connection with the case. A reply was filed to his answer and cross-petition by the plaintiff, and also a reply by the defendant thereto.

Brown in substance sets up that he was the regular attorney for and of the defendant society; that during the months of May and June, 1906, and thereafter, an attempt was made by certain persons to unite or merge the defendant society with the Second Presbyterian Church and Society of the city of Cincinnati, and also the Central Presbyterian Church and Society; that said attempted merger by Presbytery of the city of Cincinnati was contrary to the law of the Presbyterian Church, and contrary to the law in the state of Ohio; and that certain persons known as the Trustees of the Presbyterian Church of the Covenant, of the city of Cincinnati, claiming to be a church composed of the First, Second and Central Presbyterian Churches and Societies of the city of Cincinnati, threatened to take possession of the defendant society's property on East Fourth street, and threatened to exclude the trustees of the defendant society from the control and management of said property; and thereupon he was requested to recommend some attorney to assist him in defending the defendant society and its property and property rights in said matter; that he recommended the plaintiff, Wm. W. Prather; and that he and said Prather were employed by the trustees of the defendant society to protect its property and property rights, and protect the possession of the trustees of the defendant's society.

Said Sanford Brown further avers that a suit was brought in the Superior Court of Cincinnati, No. 53105, against the Trustees of the Presbyterian Church of the Covenant and others to enjoin and restrain them from interfering with the defendant

society and its property and property rights; that upon the final hearing of said cause before the Hon. Harry Hoffheimer, Judge of the Superior Court of Cincinnati, the .contention of the defendant society was sustained, and that the said parties were perpetually enjoined from interfering with the defendant society's property and its possession thereof and its property rights in said church property on East Fourth street; and that said cause was finally terminated and ended, and no error was prosecuted from the decision of said judge of the Superior Court of Cincinnati.

Said Brown claims that the reasonable value of his services is $10,000, and that he had been paid the sum of $500, leaving a balance due him of $9,500. He further avers that at the termination of said litigation in the Superior Court of Cincinnati, he came to an agreement with the defendant society to pay him for all of his services the sum of $5,000. He further avers that he rendered services for a period of six or seven months prior to the time when plaintiff was employed, and that said agreed price of $5,000 was to be in full compensation for all his services rendered jointly with plaintiff and for the separate services rendered by him prior to the employment of said Prather.

The defendant society, by reply, denies that it had agreed to pay said Brown the sum of $5,000; but avers that it had tentatively agreed to pay said sum providing said Prather, plaintiff, would also accept an equal amount, but that said Prather refused to settle for his share of the services upon the basis to be paid to said Brown.

The case was tried to the court and jury, and occupied almost three weeks. There was a joint verdict rendered for plaintiff and Sanford Brown in the sum of $15,000. The evidence adduced on the trial showed that during the progress of the case in the Superior Court of Cincinnati, from time to time there was paid by the defendant society to the plaintiff and Sanford Brown various sums of money aggregating $800 to Prather and $500 to Brown, or a total of $1,300. If this sum be added to the amount of the verdict, the total allowance to counsel for their legal services in this case would be $16,300.

A motion for a new trial is now interposed by the defendant society, and almost all the grounds stated in the statute are set out as grounds for a new trial. The principal grounds relied upon, however, by counsel for the defendant society are: that the verdict is not sustained by sufficient evidence; that the damages given are excessive; that excessive damages were given under the influence of passion and prejudice; error in refusing to give the special charges requested by the defendant; and error in admitting evidence offered by the plaintiff and Brown; and error in rejecting evidence offered by the defendant society.

As to the alleged error in the admission or rejection of evidence, the court is of the opinion that while a great mass of evidence was admitted which might properly have been excluded in the way of exhibits, pamphlets, notes of counsel taken in the preparation of the superior court case and a great number of other exhibits, nevertheless the admission or exclusion of this evidence, we think, rested in the sound discretion of the court, and we do not believe that the admission or rejection of this class of evidence materially affected or influenced the jury in arriving at their verdict.

It is possible and perhaps probable that the giving of the special charges requested by plaintiff and Sanford Brown, and the failure to give other charges requested by the defendant society, may have materially influenced or affected the jury in arriving at their verdict. The special charge relating to the character of the church property, that it was trust property and held upon trust for religious, charitable and educational purposes, might have been such error as prejudiced the defendant society; but the court is not disposed to consider the motion for a new trial or grant the same on account of any errors that may have been committed in these particulars.

Great stress is laid by counsel for the defendant upon the claim that the damages are excessive, and that the verdict is not sustained by sufficient evidence. Under Section 11576 of the General Code, Subdivisions 4 and 5, a new trial may be granted for the following causes affecting materially the substantial rights of the party making the motion for a new trial: excessive

damages, appearing to have been given under the influence of passion or prejudice, and when the action is upon a contract, whether the verdict be too large or too small.

It is claimed by counsel for the plaintiff, Prather, and Sanford Brown, that the court can not grant a new trial on the ground of the excessive amount of the verdict unless it be found that the verdict is not only excessive but appears to have been given under the influence of passion or prejudice, or unless it be found that there was some error in the amount of the recovery, whether too large or too small, under Subdivision 5 of the above cited section of the General Code.

Counsel for the defendant society contend that the authorities warrant the court in not only granting a new trial where the damages are excessive, but that the court may, as a condition upon which a new trial will not be granted, make a remittitur of the excessive amount of the verdict.

It is claimed that under Subdivision 4 of the above cited section, there is no power in the court to grant a remittitur, but only power to grant a new trial if it be found that the verdict is excessive and appears to have been rendered under the influence of passion or prejudice. It is further contended that error in the computation of the amount of the recovery is the only ground upon which a remittitur can be made under Subdivision 5 of the above cited section.

The court has examined the authorities cited by counsel on both sides as to this question, and is of the opinion that a remittitur may be granted in the case of an excessive verdict, even though it does not appear to have been given under the influence of prejudice or passion. The following authorities, we think, fully sustain the court in this position:

*Pendleton St. Ry. Co.* v. *Rahmann*, 22 Ohio St., 446: This was an action to recover damages for personal injuries caused by the negligence of the street railway company, and the court upon a motion for a new trial being argued, overruled the same on condition that the plaintiff would submit to a remittitur of $5,000 from the verdict, the verdict having been $10,000 in the case. It was claimed that the court had no power to grant a re-

mittitur, because it did not appear that the damages were excessive and given under the influence of passion or prejudice. The Supreme Court in the syllabus of the case uses this language:

"Where the damages assessed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the remittitur of the excess the condition of refusing to grant a new trial."

This rule is amply and fully sustained in the following cases: *American Contracting Co.* v. *Sammon,* 6 C.C.(N.S.), 121, 4th Syllabus; *Ch., V. & T. R. R. Co.* v. *Shannon,* 4th C. C., 449, 3d Syl.; *Sibila* v. *Bahney,* 34 O. S., 399, page 410; *Carl* v. *Pierce,* 20 C. C., 68, 4th Syl.; *Wabash R. R. Co.* v. *Fox,* 20 C. C., 440.

And it was held in the case of *Brenzinger* v. *The American Exchange Bank of Duluth,* 19th C. C., page 536, that the trial court is not confined to the statutory grounds in granting or overruling a motion for a new trial, but that in the interests of substantial justice, if the verdict appears excessive or not supported by sufficient evidence, the trial court has the power; regardless of the grounds set out in the statute, to grant a new trial.

In the case of *The Light Company* v. *Mason,* 81 Ohio State, 463, it was said by Judge Summers deciding the case:

"It seems to have been assumed in some cases that at common law, in an action for damages, sounding in tort, the court might set aside the verdict of a jury when it was so excessive that it appeared to have been influenced by passion or prejudice, but that it was powerless to disturb one that was inadequate. The fact was, however, and the doctrine now generally accepted is, that the verdict of a jury is subject to the supervision of the court whether too large or too small."

The court in this case cites with approval and adopts the rule therein laid down, the case of *Phillips* v. *London & Southwestern Ry. Co.* (1879), 5 Q. B., 78, in which James, L. J., in the court of appeals uses this language :

"Still the verdicts of juries as to the amount of damages are subject, and must, for the sake of justice be subject to the supervision of a court of first instance, and if necessary of a court of appeals in this way—that is to say—if in the judgment of the

court the damages are unreasonably large or unreasonably small, then the court is bound to send the matter for a reconsideration by another jury.''

Upon these authorities, the court has no doubt that there resides in the trial court plenary power, regardless of the grounds set out in the statute, in furtherance of justice and in the due administration of the law to grant a new trial, or as a condition for overruling the motion, grant a remittitur in cases of excessive verdicts. Courts are instituted to administer justice and to correct verdicts of juries and the abuses of the powers of juries where injustice is done, and to that end it would appear that the courts are vested with inherent power under the common law to protect themselves from pronouncing unjust judgments and thus prevent the recording of unjust judgments based upon excessive or inadequate verdicts.

In this case a great amount of evidence was introduced consisting of exhibits, notes made by counsel in the trial of the superior court case, the memoranda of authorities examined by them, and extracts from the memoranda of the records of the county recorder's office and from the law of the Presbyterian church, and all was apparently produced and offered with a studied effort to magnify the efforts which had been put forth by plaintiff and Brown in the superior court case. Many of these exhibits and much of this evidence was excluded, but that which was admitted and that which was offered in the presence of the jury could have had no other effect than to impress the jury with the magnitude of the labors performed by Prather and Brown in the superior court case. Copious notes upon decisions, ecclesiastical and civil, opinions of clergymen upon Presbyterian law, digests of the Presbyterian law, the constitution and catechism of the Presbyterian church, and numerous other papers and records were offered or admitted in evidence for the purpose of showing the amount of labor performed by counsel in the superior court case. It was claimed by plaintiff and Sanford Brown, that they had studied the Presbyterian law back to 1729, the date of the promulgation of the Westminster Confession of Faith; that they had familiarized themselves with Pres-

byterianism as laid down by John Calvin and John Knox; had studied the Short and Long Catechism; carefully gone over all of the cases decided by the Presbytery, the Synod and the General Assembly of the Presbyterian Church for more than a hundred years; had examined the title to the church property on East Fourth street back to the days of John Cleves Symmes and of the days of the founding of the city of Cincinnati; but what useful purpose could have been subserved by this vast amount of labor the court is unable to comprehend. There was a painful and lengthened recital by the plaintiff and Sanford Brown of the days and nights of toil and the burning of the midnight oil, the worry and the stress of mind, and the annoyance, solicitude and bother with trustees of the defendant's society, the ministers interested in the case and the members of the First Presbyterian Church,. extending over a period of more than three years and a half during the pendency of this case, and the court could not help but feel, during the recital of this testimony, that the evident purpose thereof was to impress the jury with the magnitude of the task which these counsel had undertaken and performed. It was stated that deep research was made by counsel into the doctrine of Presbyterianism and the authorities bearing upon church cases; conferences were had. and advice given to the clergy of the church who were aiding them before the Synod and the General Assembly of the church; and a vast number of difficulties encountered with opposing counsel in the effort to preserve the rights of the defendant's society. Almost every scrap of paper containing a memorandum or notation made in connection with the case was brought into court and offered or admitted in evidence, the manifest purpose of which was to swell the evidence before the jury.

There were also called upon the witness stand several attorneys of high standing at this bar as experts to testify and give their opinion of the reasonable value of Prather's and Brown's services. A lengthy hypothetical question was put to them, involved and complicated, a great part thereof unnecessary, and requiring two and a half hours to read, evidently prepared at great pains, and with a purpose to impress the jury as

much as the witnesses with the tremendous amount of labor expended by counsel, the difficulties and novelties of the questions involved, and the great value of the church property, estimated at from $350,000 to $400,000, and claimed in the hypothetical question to have been saved to the defendant's society by the efforts of plaintiff and Brown.

Many other incidents of the trial might be cited to show that the great part of the time of the court and jury in the trial of this case was taken up with hearing a recital of what counsel did in the preparation of the pleadings, the research work, the preparation of the law of their case, and the collection of evidence, the vast amount of which, in the opinion of the court, was wholly unnecessary, the great amount of time spent before the special master and in the court and in the preparation of the pamphlets or briefs which were submitted to the Presbyterian Synod and General Assembly, and the trial briefs before Judge Hoffheimer of the superior court.

In the superior court case there were two questions involved. It was proposed to merge or unite and in fact the Presbytery had decided that there was a merger and union of the First, Second and Central Presbyterian Churches. Now the First Presbyterian Society had submitted to it a proposition to merge or unite with the Second Presbyterian Society and Church. No proposition was ever submitted either to the First Presbyterian Church or to the First Presbyterian Society to merge or unite with the Central Presbyterian Church or Society. The law of the state of Ohio provides that there may be a merger of religious societies or corporations upon a two-thirds vote in favor thereof by each or all of the religious societies proposed to be merged. The law of the Presbyterian Church provided that there could be a merger or union of two or more congregations upon the request for such a union or merger by a majority of the members of the congregations. In the case in the superior court tried before Judge Hoffheimer, there never was a request made by the First Presbyterian congregation for a union with the Second and Central Presbyterian congregations, and therefore under the law of the church, there could have been no union

or merger of these congregations.    There never was a two-thirds vote by the members of the First Presbyterian Society to merge with the Second Presbyterian Society and Church or the Central Presbyterian Society and Church, or any other Presbyterian society and church, therefore under the law of the state of Ohio there could not have been a merger of the First Presbyterian Society with any other religious society.

The title of the First Presbyterian Society to its church property on East Fourth street was not involved in this controversy, and if it had been involved, the title to this property has been settled beyond the peradventure of a doubt to be vested in the First Presbyterian Society by two decisions of the Supreme Court of this state, which every young lawyer admitted to the bar knows or ought to know.    The cases of *The Lessees of the City of Cincinnati* v. *The First Presbyterian Church,* 8th Ohio Rep., 298, and the case of *Williams* v. *The First Presbyterian Society of Cincinnati,* 1st Ohio State Reports, 478, both of which are leading cases in the state of Ohio, leave no room for question as to the validity of the title of the defendant society to its church property on East Fourth street.

The total time consumed in the preparation, in the taking of testimony, preparing the pleadings, and the taking of evidence before the special master, the presentation of the same before Judge Hoffheimer, the argument of the case, and all other time employed by counsel after their joint employment on February 26, 1907, according to plaintiff's and Brown's testimony, although extending over a period of three and a half years was not more than 150 days.    The evidence further discloses that Brown, before Prather was employed in the case, had made extensive investigation of the facts and the law, and was able and did present to plaintiff the facts and the law which enabled him and Brown to prepare the petition in their case in the superior court covering forty-five typewritten pages.    The evidence further discloses that Brown was the regular attorney for the defendant's society, and it was through his good offices and friendship for plaintiff that he was called into the case upon Brown's recommendation.    Brown and Prather jointly prepared the res-

olution for their joint employment and procured the trustees of
the defendant society to adopt it and spread it upon their min-
utes.   No sum was mentioned as compensation for the services
to be rendered, but I think it may be safely stated, in view of
the character of the defendant society, in view of the property
which it held and the uses to which it was devoted, the fact that
the trustees had no personal interest in the property, and the
questions to be determined by the court, and the status of the
parties, that the sum of $5,000 if offered at that time, would have
been accepted with alacrity as full and fair compensation for
the services which should have been performed.

It must not be forgotten that the defendant society was in
possession of its property, and no person or persons, corporation
or society could dispossess it without due process of law.   The
defendant society and its trustees, upon a demand being made
to give up their property and surrender the possession to the
Trustees of the Church of the Covenant, or upon a demand by
the Presbytery, the Synod or the General Assembly of the Pres-
byterian Church, could very well have refused, and it would
have been incumbent upon those who claimed the right to the
possession of the property to bring an action to dispossess them.
It seems to the court that the proper advice for counsel to have
given to the defendant society's trustees at the time this injunc-
tion suit was brought, was to have ignored any demand upon
them to surrender their property, the possession or control there-
of, and compel those who were claiming the property to be the
aggressors.

The testimony of expert attorneys as to the value of the serv-
ices of plaintiff and Sanford Brown in the superior court case
ranged from $25,000 to $40,000.   There was an absence of at-
torneys to testify on behalf of the defendant society.   While it
may not be known generally, it is well known to the court that
it is next to impossible to procure an attorney to testify against
another attorney in a claim made by him for his fees.   The
species of free-masonry which exists among professional men,
whether lawyers, doctors, engineers or men of any other calling
or profession, seems to influence them and deter them from tes-

tifying against their fellow-members whenever a matter of their fees is involved. It is easy to secure the testimony of an attorney to testify as to the reasonable value of another attorney's fees, and the public generally have come to look with distrust and disfavor upon the legal profession because of this attitude on the part of the attorneys and their disposition to aid one another in securing as much fees as it is possible to secure from the client. Many attorneys act upon the principle of the French Minister, Colbert, who in the matter of taxation always endeavored to pluck as many feathers off the goose as he could possibly pluck, without making the goose squeal. It is greatly to be deplored that there were no attorneys at this bar who were willing and ready to come forward and testify as to the reasonable value of these services on behalf of defendant society. Those men who have testified to the very large amount which they have set as the reasonable value of plaintiff's and Brown's services have not, in the opinion of the court, added anything to their reputations as members of this bar, nor have they, by their conduct, tended to allay the public feeling that does exist against the legal profession. The canons of ethics adopted by the American Bar Association is one to be commended to all practicing attorneys at this bar, and it appears to the court that if these canons had been kept more in mind by plaintiff and Sanford Brown and by the attorneys who testified on their behalf as to the reasonable value of their services, there would in all probability be no question of a new trial in this case and perhaps there would have been no trial whatsoever.

It appeared in evidence that Sanford Brown proposed to accept for all of his services covering a period of more than six months longer than that rendered by Prather, the sum of $5,000, and that the defendant's society, through its trustees, appeared to be willing and ready to pay him that amount for his services provided Prather would settle for a like amount or even a somewhat larger amount, but the plaintiff immediately upon the termination of the litigation in the superior court, fixed the value of his service at $15,000, apparently without any consultation with his associate, Sanford Brown, disregarding entirely

the courtesy that he owed to Brown in view of the fact that Brown had brought him into the case. Plaintiff declined and refused to meet with the trustees of the defendant's society in an effort to adjust these fees, but referred them to his attorney. He never rendered any bill for his services but stood upon the ground that his services were worth $15,000; that sum should be paid or the defendant society would face a lawsuit.

As heretofore stated, the court can not but believe that an offer of $5,000 for the performance of all these services, if made before Prather and Brown were employed, would not have been refused but would have been considered not only by them but by any other lawyer of high standing at this bar as a large fee for the services which were necessary to be performed for the protection of the defendant society and its property.

When learned attorneys as experts testify as to the reasonable value of the services in like cases at this bar, it is the opinion of the court that there were very few cases of like character tried or heard at this bar in the last twenty-five or thirty years. The only case which the court can call to mind was that of Kittredge & Wilby against Armstrong, receiver, tried twenty years ago in the Superior Court of Cincinnati, where plaintiff in that case recovered a judgment of $18,000 with interest, aggregating $19,-964.58, for services rendered to Armstrong, receiver of the Fidelity National Bank, wherein these attorneys recovered a judgment against the directors of the Fidelity National Bank in the sum of $450,000 and brought to the receiver the entire amount of the judgment, $450,000. The results to the client in that case were so much greater than any possible results that could inure to the benefit of defendant society in this case; the standing of the lawyers in that case at this bar was at least as great as that of the plaintiff and Sanford Brown in this case; the difficulties of the case which Messrs. Kittredge & Wilby had to contend against; and the great financial benefit resulting to their client, the receiver, were such that if a like result had been produced in this case, there might be some claim made that the verdict is not excessive.

It must not be forgotten that attorneys at law are officers of the court, and that it is the duty of the court to protect itself

and also protect litigants against any unjust or unconscionable charges made by these officers of the court. Formerly attorneys were not permitted to charge for their services, and in England now attorneys are not permitted to charge for their services, but accept whatever honorarium or gratuity may be given to them by their clients. The right to charge is a privilege given by the state of Ohio to attorneys at law in consideration of the services which they render in aiding the court in the administration of justice. It is also known to the court that the salaries paid to judges range from $6,000 in the court of common pleas and the circuit court to $6,500 to the judges of the Supreme Court, the highest judicial tribunal in the state, for one year's services; and in addition thereto, those who take a seat upon the bench are prohibited from practicing law and are required to give up all their clientage and devote their entire time to the administration of justice. Will it be claimed for a moment that five month's services by attorneys in the preparation and trial of a case is worth two and a half times as much as the entire yearly salary of a judge of the court of common pleas or of the superior court? In this case, it does not appear but that Prather and Brown also attended to other matters for other clients during the time that they were preparing and trying the case before Judge Hoffheimer. It does not appear that they lost any other business by reason of devoting their time to this case for which they ask compensation, and it is fair to presume that if either or both of them had any clientage whatsoever, they must have made an additional sum during the time that this case was pending.

The court of common pleas in partition cases has fixed a rule allowing counsel fees to the attorney who brings a suit in partition upon the theory that he has rendered services for the benefit of all the parties. If there had been a partition case of this church property and it had been sold for $400,000, the entire fees allowed to the attorneys who would have brought the partition suit would be less than $2,500. In the probate court of this county, a rule has been adopted allowing counsel fees in cases of sales of real estate. If this property had been sold through the probate court and administered therein, and these

attorneys had acted as counsel in the sale of the property, the court would not have allowed them to exceed $3,500 or $4,000.

Among the other canons of ethics adopted by the American Bar Association, it is said that controversies with clients concerning compensation are to be avoided by the lawyer so far as shall be compatible with his self-respect and with his right to receive reasonable compensation for his services; and lawsuits with clients should be resorted to only to prevent injustice, imposition or fraud.

It is claimed in this case by counsel and was claimed in the argument to the jury and in the hypothetical question put to the experts, that counsel fees were contingent or uncertain. The employment did not provide that counsel were to take the case and perform the services contingent upon success. The evidence shows they were paid $1,300 during the progress of the case, and there is no reasonable ground for claiming that their fees were dependent upon their success. It is true that attorneys employed by any person may not get their fees. That is a risk which they run and which they can avoid, if they desire, at least in part, by demanding and receiving retainers.

In this case, the court has fully considered all the matters involved in the case; has fully considered the nature of the controversy involved in the superior court case; has read fully and considered the very able, exhaustive and conclusive decision of the very learned judge of the superior court who rendered the the same, Judge Hoffheimer; the court has considered the fact that the plaintiff and Sanford Brown are officers of this court, and that the court himself has some knowledge of the reasonable value of counsel fees; he has considered the character of the property, that it is a quasi-public trust for religious, charitable and educational uses; that while it is not a public charity in the full sense of the word, nevertheless the church property on East Fourth street is for the use and benefit of every person who desires to become a member of the church or a pewholder, or a contributor to the support of the church, whether he be a Presbyterian or not; that the defendant society's property is devoted to the elevation of morals, to the propagation of relig-

ion, and to the cultivation, to some extent at least, of education and not only among its members but others who come within the pale of its influence. The court has also considered the fact that the trustees of the defendant society are merely trustees and have no personal, financial interest in this property, and could not devote the property to any other use than religious, charitable and educational purposes. The court has also considered that attorneys owe a public duty to the court and to the public to aid in the administration of justice, and that while the laborer is worthy of his hire, nevertheless it must be borne in mind that the law is a profession whose basis is public service; that it exists to promote justice and to facilitate the action of courts of justice; that it is not a money-making profession, nor was it ever intended to be such.

The court has also to keep in mind the reasonable amount that should be charged for similar services in similar cases, and upon the whole, while the court is not disposed to find fault with the jury because of the verdict which they rendered in view of the extraordinary character of the trial and the testimony produced, nevertheless the court is of the opinion that this verdict is excessive and that while it may not appear to have been rendered under the influence of passion or prejudice, it is so great that the court can not in good conscience allow a judgment to be entered thereon. This conclusion is arrived at without regard to the court's personal feelings or the relationship of the plaintiff and Sanford Brown to the court, but with the sole thought in mind that it is his duty under his oath of office as he understands it, not to permit an injustice to be done if it can be averted.

The defendant society has not the means to pay this verdict. Whatever sum shall be paid to plaintiff and Brown for their services must be raised among the members of this religious society either by voluntary contributions, by mortgaging their church property, or by making a loan from some person who is willing to lend money to pay these attorneys' fees.

In view of all the circumstances of this case, I am of the opinion that $10,000 would be a very large fee to allow to plaintiff

and Sanford Brown jointly for all the services which they have rendered to the defendant society. I can not but feel that if a sincere effort had been made to settle the fees of plaintiff and Brown with the defendant society, from the disposition of the trustees who appeared upon the witness stand, there would have been no occasion for this litigation.

It is the judgment of the court that if the plaintiff and Sanford Brown will accept a remittitur of $5,000 from this verdict and permit a judgment to be entered in the sum of $10,000, the motion for a new trial will be overruled; otherwise it will be granted.